IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO:

SUNTRUST INVESTMENT
SERVICES, INC., f/k/a SunTrust
Securities, Inc., a Georgia corporation,

        Plaintiff,

v.

DAVID JARRETT, individually,

        Defendant.
_____/

## COMPLAINT - EMERGENCY INJUNCTIVE RELIEF REQUESTED

Plaintiff, SUNTRUST INVESTMENT SERVICES, INC. f/k/a SunTrust Securities, Inc. ("SUNTRUST"), by and through its undersigned counsel, hereby brings the following Complaint against Defendant, DAVID JARRETT (hereinafter "JARRETT") for: (i) injunctive relief pursuant to Rule 65, Fed.R.Civ.P.

### I. PARTIES

1.     This is an action for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, arising from the breach of an employment contract by JARRETT, which contract JARRETT breached and continues to breach in Hillsborough County, Florida.

2.     Plaintiff, SUNTRUST, is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Georgia, and is authorized to conduct business in Florida.

3. Defendant JARRETT is a former SUNTRUST employee, who, through March 17, 2008, was employed as a Financial Advisor in SUNTRUST's Tampa, Florida office and whose residential address is believed to be

## II. JURISDICTION AND VENUE

4. Subject matter jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332. The matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship. Injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65. Venue is proper in this judicial district under 28 U.S.C. §1391(a), *inter alia*, as it is the district in which the conduct complained of arose and continues to arise, and in which Defendant, JARRETT, resides.

## III. THE FACTS

5. As a condition of JARRETT's employment with SUNTRUST, on October 1, 2004, JARRETT executed a Nonsolicitation and Confidentiality Agreement (the "Agreement") in favor of SUNTRUST. A Copy of JARRETT's Agreement is annexed hereto as Exhibit "A".

6. The Agreement executed by JARRETT provides, in pertinent part:

> **3. Trade Secrets and Confidential Information.** I understand and agree that...I will treat confidentially all information, records, files and discussions derived as a part of my employment with SunTrust. I further agree that...Protected Information will not be used by me in connection with any other employment or consulting capacity or otherwise divulged except as necessary to meet SunTrust's business needs.
>
> a. **Trade Secrets.** As used in this Agreement, "Trade Secrets" means all secret, proprietary or confidential information regarding SunTrust or its business, including... but not limited to, financial information, strategic plans and forecasts, marketing plans and forecasts, customer lists, mailing lists...

\* \* \*

2

b.  **Nondisclosure of Trade Secrets**. Throughout the term of this Agreement and at all times after the date that this Agreement terminates for any reason, I agree not to transmit or disclose, directly or indirectly, any Trade Secret of SunTrust to any person, concern or entity, and not to make use of such Trade Secret, directly or indirectly, for myself or for others...

c.  **Confidential Information Defined.** As used in this Agreement, the term "Confidential Information" means all information regarding SunTrust, its activities, business or customers that (i) is not generally known to persons not employed by SunTrust (ii) does not rise to the level of a Trade Secret...

d.  **Nondisclosure of Confidential Information**. Throughout the term of this Agreement and for a period of two (2) years after my separation from SunTrust for any reason, I agree no to transmit or disclose, directly or indirectly, any Confidential Information to any person, concern or entity, and not to use any such Confidential Information, directly or indirectly, for myself or for others, other than for legitimate business purposes on behalf of SunTrust...

**4. Rights to Materials and Return of Materials.** All records, files, software, memoranda, reports, price lists, customer lists, intellectual property, drawings, plans, sketches, documents, Protected Information and the like (together with all copies of such documents and things) relating to the business of SunTrust that I use or prepare or come in contact with in the course of, or as a result of, my employment shall, as between the parties to this Agreement, remain the sole property of SunTrust...Within twenty-four (24) hours after my separation from SunTrust for any reason or immediately upon the demand of SunTrust at any time, I shall promptly return all such materials and things to SunTrust...

\* \* \*

**7. Nonsolicitation of Customers.** In light of SunTrust's legitimate interest in protecting its Protected Information and preserving its good will, I agree that, for a period of one (1) year immediately following my separation from SunTrust, I will not, without the prior written consent of the Executive Vice President of PCS or his or her designee, directly or indirectly, for myself or on behalf of any other person or Affiliated Entity, solicit or attempt to solicit any Customer or Potential Customer for purposes of providing,

> marketing, servicing or selling PCS Products and Services, provided that such products and/or services are then being provided, marketed, serviced or sold by SunTrust.
>
> **8. Nonsolicitation of Employees.** During my employment with SunTrust and for a period of one (1) year after my separation for any reason, I will not directly or indirectly solicit or encourage any PCS employee to leave SunTrust employment.

7. SUNTRUST employees are required to execute a Nonsolicitation and Confidentiality Agreement certifying in writing that they have read and understand the Agreement and that they agree to abide by its terms. In accordance with SUNTRUST's corporate policy, JARRETT executed a Nonsolicitation and Confidentiality Agreement, specifically agreeing to comply with the confidentiality and non-solicitation restrictions contained therein as a condition of his employment with SUNTRUST (*See* Exhibit "A" attached hereto).

8. JARRETT executed the Agreement in exchange for employment and consideration from SUNTRUST including, without limitation:

   (a) Employment to JARRETT, as a financial advisor in a sales capacity;

   (b) Payment to JARRETT of salary and other compensation during his employment;

   (c) Appropriate facilities, sales support, benefits, and other good and valuable consideration; and,

   (d) Assignment to JARRETT of numerous customer accounts.

9. SUNTRUST provided the above consideration to JARRETT and has satisfied all conditions precedent to the maintenance of this action.

10. More specifically, SUNTRUST compensated JARRETT at all times during his period of employment with SUNTRUST, provided JARRETT with ongoing training, registered and licensed him with the New York Stock Exchange, National Association of Securities Dealers, the

American Stock Exchange, the Florida Department of Securities and other various state securities commissions and, otherwise, provided her with SUNTRUST benefits and support at all times.

11. In addition to the foregoing, SUNTRUST provided JARRETT, with office facilities, secretarial services, clearing services, sales assistants, research, operational systems and promotional marketing and sales support.

12. By virtue of his employment at SUNTRUST, JARRETT gained access to the books and records of SUNTRUST, the confidential information contained therein, and, especially, the identity of SUNTRUST customers, including their names and addresses, financial statements, investment objectives, and the securities held by these customers in their SUNTRUST accounts.

13. As a result of the foregoing, JARRETT specifically acquired information and records that revealed the names, addresses and confidential information of hundreds of SUNTRUST accounts, representing tens of millions of dollars in assets under SUNTRUST management, which generated hundreds of thousands of dollars in commission revenue for SUNTRUST in the trailing twelve (12) month period prior to his resignation.

14. *Without any advance notice whatsoever*, JARRETT resigned from employment with SUNTRUST on March 17, 2008. A copy of JARRETT'S resignation letter is annexed hereto as Exhibit "B." It has since been learned that JARRETT joined a competitor securities firm, Wachovia Securities, LLC ("Wachovia"), and has actively and aggressively undertaken a solicitation campaign of existing SUNTRUST customers and employees. (See Affidavits of Ryan Shim, Paula Sanagustin and David Codella, as well as Declaration of SunTrust Customer "T.S.," filed contemporaneously herewith).

15. SUNTRUST maintains a good faith belief and therefore avers that JARRETT wrongfully converted SUNTRUST records and is aggressively attempting to divert SUNTRUST customers and employees to his new employer, Wachovia.

16. SUNTRUST believes and therefore avers that JARRETT has prepared to engage in, engaged in, and continues to engage in, inter alia, the following acts:

   (a) converting for personal use original or copies of SUNTRUST customer records and/or the confidential information contained therein, specifically including the names, addresses, phone numbers, and other confidential financial information of the customers he serviced (or had access to) at SUNTRUST;

   (b) transmitting to his new employer and/or others, clients' names, addresses and other information contained in the records of SUNTRUST;

   (c) soliciting and/or preparing to solicit SUNTRUST's clients to terminate their relationship with SUNTRUST and transfer their accounts to his new employer;

   (d) soliciting SUNTRUST employees to terminate their employment with SUNTRUST; and,

   (e) other such acts contrary to the terms, conditions, and provisions of the agreement signed by Defendant, as well as, SUNTRUST's property rights and Defendant's statutory, common law and fiduciary obligations.

17. JARRETT's conduct was and is in furtherance of a scheme to obtain and convert to his personal use and gain the records of SUNTRUST, the property of SUNTRUST, the names and addresses and other customer information and records used to conduct business at SUNTRUST, the client lists and contacts of SUNTRUST, the trade secrets of SUNTRUST, confidential information of SUNTRUST, and the goodwill generated, directly and indirectly, by JARRETT's association with SUNTRUST, and to do so by means of, inter alia, solicitation of clients and employees of SUNTRUST whose names became known to him while in the employ of SUNTRUST.

18. SUNTRUST believes and, therefore, avers that:

(a) Defendant JARRETT has possession or control over SUNTRUST records, SUNTRUST documents, confidential customer information, SUNTRUST proprietary information, SUNTRUST trade secrets, lists of SUNTRUST customer accounts and/or copies or reproductions thereof, including names, addresses and investment information of SUNTRUST customers;

(b) Defendant JARRETT has used and will continue to use this information to solicit SUNTRUST accounts and to divert the business of SUNTRUST customers from SUNTRUST to Defendant's new employer, Wachovia; and

(c) Defendant JARRETT will otherwise continue to engage in acts constituting a breach of the terms of his SUNTRUST Nonsolicitation and Confidentiality Agreement and SUNTRUST policies and other tortious conduct, including breach of fiduciary duty, conversion of trade secrets and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

19. The averments of paragraphs 1 through 18 are incorporated by reference herein with the same force and effect as if set forth in full below.

20. By virtue of the foregoing, SUNTRUST has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant, JARRETT.

21. Unless JARRETT is temporarily and/or preliminarily enjoined from the foregoing conduct, SUNTRUST will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and other confidential information which is solely the property of SUNTRUST and its clients;

(b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c) Loss of personnel, damage to office stability and a threat to the enforcement of reasonable contracts; and,

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

22. SUNTRUST has no adequate remedy at law.

WHEREFORE, SUNTRUST respectfully requests that a temporary restraining order and/or a preliminary injunction issue immediately, (pending the outcome of arbitration held in accordance with Rule 13840 of the FINRA Code of Arbitration Procedure) enjoining Defendant JARRETT, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendant's new employer, from:

(a) Soliciting or otherwise initiating any further contact or communication with any client of SUNTRUST whom the Defendant serviced or whose name became known to him while in the employ of SUNTRUST for the purpose of doing business with Defendant and Defendant's new employer (excluding members of Defendant's immediate family and relatives);

(b) Soliciting or otherwise initiating any further contact or communication with any client of SUNTRUST whose records or information JARRETT used in violation of his Agreements. This specifically includes any client whom JARRETT may have contacted by mail, phone or otherwise through the use of any information obtained by JARRETT while in the employ of SUNTRUST (excluding members of Defendant's families and relatives);

(c) Soliciting SUNTRUST employees or otherwise attempting to interfere with the employment relationships with SUNTRUST;

(d) Using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of SUNTRUST;

(e) Requiring that all original records and customer information, together with all copies and/or reproductions thereof, in whatever form, be returned to SUNTRUST's Tampa office within twenty-four (24) hours after service of the Court's Order upon JARRETT or his legal counsel; and

(f) Requiring that JARRETT provide SUNTRUST, within forty-eight (48) hours after service of the Court's Order upon JARRETT or his legal counsel, with a list specifically identifying each and every SUNTRUST customer or employee whom JARRETT, directly or indirectly, including through an agent or employee or Wachovia, contacted or attempted to contact by telephone, mail, email, in-person or otherwise; and,

(e) Any and all other such acts as this Court deems appropriate for injunctive relief.

Respectfully submitted:

WEISMAN, BRODIE, STARR & MARGOLIES, P.A.
Attorneys for SUNTRUST
1301 N. Federal Highway
Lake Worth, Florida 33460
Telephone: (561) 588-9500
Facsimile: (561) 588-9550
Email: dbrodie@yourfloridacounsel.com

By:_____
    David H. Brodie
    Florida Bar No. 813168

EXHIBIT "A"

## NONSOLICITATION AND CONFIDENTIALITY AGREEMENT

My full name is David E. Jarrett, my social security number is 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 and I am currently employed as a Vice President (functional title) in the Private Client Services ("PCS") Division of SunTrust (as defined below) in Tampa, Fl (city and state). This Agreement will take effect October 1, 2004. I am entering into this Agreement on behalf of myself, my heirs, successors, and personal representatives (collectively referred to in this Agreement as "I", "me" or "my" as appropriate). For purposes of this Agreement, SunTrust means SunTrust Banks, Inc. and any of its present or future affiliates or subsidiaries and their successors and assigns.

1. **Basis for Agreement.** I acknowledge that SunTrust compensates me for attracting and retaining customers for PCS and I further acknowledge SunTrust's significant and legitimate interest in retaining its PCS customers and employees, and Protected Information (as defined below), both during and following my employment with SunTrust. I, therefore, agree to enter into this Agreement (i) limiting my solicitation of PCS customers and employees, (ii) restricting any disclosure or use of Protected Information, and (iii) requiring that any dispute under this Agreement be resolved in accordance with the provisions of paragraph 12 below, all in return for SunTrust permitting me to participate in the SunTrust incentive compensation plan applicable to the PCS position I hold from time to time hereafter.

2. **Reasonableness of Agreement.** I agree that (i) the nondisclosure and nonsolicitation periods described in paragraphs 3, 7 and 8 of this Agreement are acceptable and reasonable in all respects in light of the nature of the business of SunTrust, the training and professional development I have received and SunTrust's legitimate need to protect its good will and guard against the disclosure or misuse of its Protected Information, which has been or will be disclosed to me and/or to which I have had or will have access, specifically including, without limitation, information regarding its customers and employees, and (ii) the conditions imposed upon me by this Agreement and the enforcement by SunTrust of these conditions will not cause me any undue hardship. I acknowledge and agree that my violation of the provisions of this Agreement will substantially and irreparably damage and impair the business of SunTrust as further set forth in paragraph 10 below.

3. **Trade Secrets and Confidential Information.** I understand and agree that, as set forth in more detail below, I will treat confidentially all information, records, files and discussions derived as a part of my employment with SunTrust. I further agree that, as set forth below, Protected Information will not be used by me in connection with any other employment or consulting capacity or otherwise divulged except as necessary to meet SunTrust's business needs.

    a. **Trade Secrets.** As used in this Agreement, "Trade Secrets" means all secret, proprietary or confidential information regarding SunTrust or its business, including any and all information not generally known to, or ascertainable by, persons not employed by SunTrust, the disclosure or knowledge of which would permit those persons to derive actual or potential economic value therefrom or to cause economic or financial harm to SunTrust. Such information shall include, but not be limited to, financial information, strategic plans and forecasts, marketing plans and forecasts, customer lists, mailing lists,

computer software (including without limitation, source code, object code and manuals), customer billing or order information, technical information regarding SunTrust's products or services, prices offered to or paid by customers, purchase and supply information, current and future development and expansion or contraction plans of SunTrust, sales and marketing plans and techniques, information concerning personnel assignments and operations of SunTrust and matters concerning the financial affairs, future plans and management of SunTrust. "Trade Secrets" shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating a legal right or privilege of SunTrust. This definition shall not limit any definition of "trade secrets" or any equivalent term under any state or federal law.

b. Nondisclosure of Trade Secrets. Throughout the term of this Agreement and at all times after the date that this Agreement terminates for any reason, I agree not to transmit or disclose, directly or indirectly, any Trade Secret of SunTrust to any person, concern or entity, and not to make use of any such Trade Secret, directly or indirectly, for myself or for others, other than for legitimate business purposes on behalf of SunTrust, without the prior written consent of the Executive Vice President of PCS or his or her designee.

c. Confidential Information Defined. As used in this Agreement, the term "Confidential Information" means all information regarding SunTrust, its activities, business or customers that (i) is not generally known to persons not employed by SunTrust, (ii) does not rise to the level of a Trade Secret and (iii) is not generally disclosed by SunTrust's practice or authority to persons not employed by SunTrust. "Confidential Information" shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right or privilege of SunTrust. This definition shall not limit any definition of "confidential information" or any equivalent term under state or federal law.

d. Nondisclosure of Confidential Information. Throughout the term of this Agreement and for a period of two (2) years after my separation from SunTrust for any reason, I agree not to transmit or disclose, directly or indirectly, any Confidential Information to any person, concern or entity, and not to use any such Confidential Information, directly or indirectly, for myself or for others, other than for legitimate business purposes on behalf of SunTrust, without the prior written consent of the Executive Vice President of PCS or his or her designee.

e. Protected Information. As used in this Agreement, "Protected Information" means all Trade Secrets and Confidential Information.

f. Enforceability of Covenants. These nondisclosure covenants shall survive the expiration or termination of this Agreement for any reason.

4. Rights to Materials and Return of Materials. All records, files, software, memoranda, reports, price lists, customer lists, intellectual property, drawings, plans, sketches, documents, Protected Information and the like (together with all copies of such documents and things relating to the business of SunTrust that I use or prepare or come in contact with

in the course of, or as a result of, my employment shall, as between the parties to this Agreement remain the sole property of SunTrust. All tangible property and things provided to me by SunTrust or obtained by me, directly or indirectly, from SunTrust, also shall remain the sole property of SunTrust. Within twenty-four (24) hours after my separation from SunTrust for any reason or immediately upon the demand of SunTrust at any time, I shall promptly return all such materials and things to SunTrust and thereafter shall not retain any copies or remove or participate in removing any such materials or things from the premises of SunTrust.

5. <u>Duty of Loyalty</u>. During my employment with SunTrust, I will not directly or indirectly compete with any business line, product or service provided by SunTrust to its customers.

6. <u>Definitions</u>.
   As used in paragraphs 6, 7 and 9 of this Agreement, certain terms will be defined as follows:

   a. <u>Customer</u>. "Customer" means any individual or entity to whom SunTrust has provided products or services and with whom I had, alone or in conjunction with others, Material Contact on behalf of SunTrust during the one (1) year period prior to my separation from SunTrust;

   b. <u>Potential Customer</u>. "Potential Customer" means any individual or entity to whom SunTrust has actively sought to provide products and/or services within the one (1) year period immediately prior to my separation from SunTrust and with whom I had, alone or in conjunction with others, Material Contact on SunTrust's behalf during the same time period

   c. <u>Material Contact</u>. "Material Contact" means my (i) having business dealings with the Customer or Potential Customer on SunTrust's behalf, (ii) being responsible for supervising or coordinating the dealings between the Customer or Potential Customer and SunTrust, or (iii) obtaining trade secrets or confidential business information about the Customer or Potential Customer as a result of my association with SunTrust and which I would not have obtained but for my association with SunTrust;

   d. <u>Affiliated Entity</u>. "Affiliated Entity" means any entity with which I am or may at anytime in the future become affiliated as an employee, officer, director, agent or person having a financial interest therein of 5% or greater, and any subsidiary or affiliate of any such entity.

   e. <u>PCS Products and Services</u>. "PCS Products and Services" shall mean investment, private banking, fiduciary, managed agency, custodial, insurance, annuity or brokerage products and/or services.

7. <u>Nonsolicitation of Customers</u>. In light of SunTrust's legitimate interest in protecting its Protected Information and preserving its good will, I agree that, for a period of one (1) year immediately following my separation from SunTrust, I will not, without the prior written consent of the Executive Vice President of PCS or his or her designee, directly or indirectly, for myself or on behalf of any other person or Affiliated Entity, solicit or attempt to solicit

any Customer or Potential Customer for purposes of providing, marketing, servicing or selling PCS Products and Services, provided that such products and/or services are then being provided, marketed, serviced or sold by SunTrust. Notwithstanding the foregoing, I will not be precluded from soliciting or attempting to solicit any Customer that purchased PCS Products and Services from SunTrust directly through me within the first one-hundred and twenty (120) days of my employment with the SunTrust PCS line of business, except for any such Customer who (i) had a business relationship with SunTrust prior to my employment with SunTrust, or (ii) was referred to me by another SunTrust employee as reflected on a PCS referral form.

8. <u>Nonsolicitation of Employees</u>. During my employment with SunTrust and for a period of one (1) year after my separation for any reason, I will not directly or indirectly solicit or encourage any PCS employee to leave SunTrust employment.

9. <u>Public Solicitation</u>. Nothing contained in paragraphs 7 or 8 above will prohibit public advertising to or solicitations of Customers, Potential Customers or PCS employees in general so long as the advertising and solicitations are not specifically directed to Customers, Potential Customers or PCS employees.

10. <u>Equitable Remedies and Remedies at Law</u>. I recognize that it would be impractical and extremely difficult to determine actual damages to SunTrust in the event of a breach of this Agreement by me and that in the event of such a breach, SunTrust will suffer irreparable harm for which money damages alone will not be an adequate remedy. Accordingly, if I commit a breach, or threaten to commit a breach, of any of the provisions of this Agreement, SunTrust will be entitled to all available legal and equitable remedies, including without limitation, injunctive relief, both preliminary and permanent, and SunTrust will not be required to post a surety bond in connection therewith. I further agree that SunTrust will be entitled to money damages for any loss suffered or to be suffered as a consequence of my breach of this Agreement.

11. <u>Waiver and Severability</u>. If any provision of this Agreement is waived by SunTrust or me or is determined to be unenforceable or unlawful, the waiver or finding of unlawfulness or unenforceability will not act as a waiver or finding of unlawfulness or unenforceability of any other provision of this Agreement. I understand that SunTrust may at various times decide not to enforce all or part of this Agreement or similar nonsolicitation and confidentiality agreements with me or other SunTrust employees, and I agree that any such waiver will not prevent SunTrust from enforcing any or all of the remaining provisions of this Agreement against me.

12. <u>Enforcement and Rights</u>.

    a. <u>Binding NASD Arbitration</u>. If I am alleged to have breached this Agreement while employed by, or subsequent to employment with, SunTrust as a registered representative or an employee of any affiliate of SunTrust that is a broker-dealer registered with the National Association of Securities Dealers, Inc. ("NASD"), I agree that any claim arising from or relating to this Agreement or a breach of this Agreement will be settled by binding arbitration in accordance with the Code of Arbitration Procedure (the "Code") of

NASD Dispute Resolution, Inc. The arbitration shall take place in the jurisdiction of my most recent PCS office. If the arbitrators make an award, a judgment on the award may be entered in any court having jurisdiction. In addition, either party may apply to the state court or federal court serving the jurisdiction of my most recent PCS office for any temporary injunction or other equitable remedy in aid of arbitration pending final resolution of the dispute through arbitration. The right to seek injunctive or other equitable relief will serve only as an aid to arbitration pending final resolution of the dispute through arbitration. In the event any party institutes legal, equitable or arbitration proceedings to enforce or collect damages under this Agreement, I agree that the court or arbitrator may award reasonable attorneys' fees and expenses to the prevailing party or divide the fees and expenses between the parties in a manner that reflects the outcome of the arbitration.

BEFORE SIGNING BOTH THIS AGREEMENT AND THE SIGNATURE BLOCK AT THE END OF THIS PARAGRAPH 12 a, I CERTIFY THAT I HAVE READ THE PRECEDING PARAGRAPH AND THAT I UNDERSTAND THE FOLLOWING:

- Under the terms and subject to the exclusions set forth in the preceding paragraph 12 a, I am agreeing to arbitrate any dispute, claim, or controversy that may arise between SunTrust and me. This means I am giving up the right to sue SunTrust or another person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
- A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under NASD rules if I am a registered representative, and such a claim may be arbitrated at the NASD only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.
- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
- The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.
- The arbitrators do not have to explain the reason(s) for their award.
- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.
- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

_____          _____
Employee (Signature)                              SunTrust (Signature)

b. <u>Court Litigation.</u> If I am alleged to have breached this Agreement while I am employed by, or subsequent to employment with, SunTrust in a capacity other than as a registered representative or employee of any affiliate of SunTrust that is a broker-dealer registered with the NASD, I agree that any claim arising from or relating to this Agreement will be brought in the court located in or having jurisdiction over my most recent PCS office.

c. <u>Expenses.</u> In the event any party institutes legal or equitable proceedings to enforce or collect damages under this Agreement, I agree that the reasonable attorneys' fees and expenses incurred by the prevailing party in enforcing this Agreement shall be paid by the non-prevailing party.

13. <u>Governing Law.</u> This Agreement shall be construed and governed by the laws of the state in which my PCS office is located at the time I am alleged to have breached this Agreement, and with respect to arbitration, the Federal Arbitration Act and the Code.

14. <u>Complete Agreement.</u> Nothing in this Agreement shall limit or supersede any rights or remedies otherwise available to SunTrust under federal, state or local law but shall be cumulative with any such rights and/or remedies. This Agreement contains the entire agreement between SunTrust and me regarding the matters described herein, except that I understand that it supplements my obligations under the SunTrust Code of Conduct and the SunTrust Employee Handbook. No modifications or amendments to this Agreement will be permitted unless they are in writing, agreed to by the Executive Vice President of PCS or his or her designee, and signed by both parties. I acknowledge that any SunTrust affiliate with whom I am employed following my execution of this Agreement is entitled to enforce its rights hereunder even though I may have been employed by a different SunTrust affiliate at the execution of this Agreement.

The parties signify their willingness to be bound by this Agreement by their signatures below:

Employee Signature: _David E. Jarrett_  
Printed Name: _David E. Jarrett_  

Date: _October 1, 2004_

SunTrust Banks, Inc. or Affiliate Signature: _Kan Hann_  
Printed Name: _Kan Hamilton_  
Title: _SVP_  
SunTrust Affiliate: _SunTrust Services_  
Date: _9-23-04_

EXHIBIT "B"

March 17th, 2008

To: Karl Hamilton
SunTrust Investment Services, Inc.
401 E. Jackson Street, 19th Floor
Tampa, Fl.  33602

From: David E. Jarrett

Ref: Resignation

Effective immediately, I resign my position as Vice President / Private Financial Advisor with SunTrust Investment Services, Inc. If SunTrust Investment Services, Inc. has any issue regarding my employment or the termination of my employment, please contact my council, Craig Stein at 561-368-0888.

Sincerely,

*David E. Jarrett*